Garni and Sconiers, JJ.
(dissenting). We respectfully disagree with the conclusion of our colleagues that Supreme Court properly granted defendant’s motion for summary judgment dismissing the amended complaint in its entirety, and we therefore dissent in part. We conclude that the statements that were “of and concerning” plaintiff were “reasonably susceptible of a defamatory connotation” (James v Gannett Co., 40 NY2d 415, 419 [1976], rearg denied 40 NY2d 990 [1976]; see Bee Publs. v Cheektowaga Times, 107 AD2d 382, 382-383, 386 [1985]) and that defendant is not entitled to the protection afforded by Civil Rights Law § 74 for those statements. We thus would modify the order by denying defendant’s motion to the extent that it concerns the statements pertaining specifically to plaintiff, and we would strike the affirmative defense of Civil Rights Law § 74 as to those statements.
On October 25, 2007, general counsel for National Air Cargo, Inc. (NAC), with approval from NAC’s board of directors, pleaded guilty on behalf of NAC to one count of filing a false statement. The plea agreement was described by the Federal District Court as a “global settlement” in satisfaction of “all Federal offenses committed” by the corporation during the relevant time period. In the days and weeks following the plea, defendant published a series of articles reporting that the company, inter alia, admitted to “cheating” the United States military out of millions of dollars. Throughout the series of articles, defendant made numerous statements naming plaintiff specifically, and reporting that plaintiff had evaded serving jail time as a result of the plea deal by employing “the best lawyers money could buy” and a “dream team” of attorneys. An edito *1490 rial published on November 8, 2007, asked “why in the name of decency should the leaders of National Air Cargo escape personal punishment for cheating the U.S. Defense Department — and, therefore, American troops and taxpayers — during wartime?” It went on to say, “there’s no law that says companies and their leaders can’t be moral, ethical, patriotic and plain honest.” In another article, published March 2, 2008, defendant reported that “[t]he couple [referring to plaintiff and his wife] also maintains that it stopped cheating the government in 2005.” Notably, plaintiff was not a named defendant in the federal criminal action against NAC and there was no admission of criminal liability on the part of plaintiff during the proceedings (see generally Fraser v Park Newspapers of St. Lawrence, 246 AD2d 894, 895-896 [1998]).
“For a report to be characterized as ‘fair and true’ within the meaning of [Civil Rights Law § 74], . . . it is enough that the substance of the article be substantially accurate” (Holy Spirit Assn. for Unification of World Christianity v New York Times Co., 49 NY2d 63, 67 [1979]). Because the various reports impute wrongdoing to plaintiff as an individual, they produce “a different effect on the mind of the reader from that which the pleaded truth would have produced” (Dibble v WROC TV Channel 8, 142 AD2d 966, 967 [1988] [internal quotation marks omitted]) and “suggest[ ] more serious conduct than that actually suggested in the official proceeding” (Daniel Goldreyer, Ltd. v Van de Wetering, 217 AD2d 434, 436 [1995]). We therefore conclude that, with respect to the reports specifically concerning plaintiff, defendant did not act “ ‘as the agent of the public, reporting only that which others could hear for themselves were they to attend the proceedings’ ” (Dibble, 142 AD2d at 968, quoting Hogan v Herald Co., 84 AD2d 470, 477-478 [1982], affd 58 NY2d 630 [1982]). Thus, in our view, defendant is not entitled, as a matter of law, to protection under Civil Rights Law § 74 for the statements pertaining to plaintiff specifically. Present — Centra, J.E, Peradotto, Garni, Lindley and Sconiers, JJ.